**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Cupp,* Slip Opinion No. 2018-Ohio-5211.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-5211

THE STATE OF OHIO, APPELLANT, *v.* CUPP, APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Cupp,* Slip Opinion No. 2018-Ohio-5211.]**

*R.C. 2967.191—A defendant is not entitled to jail-time credit while held on bond if at the same time the defendant is serving a sentence on an unrelated case.*

(Nos. 2017-1547 and 2017-1701—Submitted July 17, 2018—Decided December 27, 2018.)

APPEAL from and CERTIFIED by the Court of Appeals for Geauga County, No. 2016-G-0097, 2017-Ohio-7948.

_____

SYLLABUS OF THE COURT

A defendant is not entitled to jail time credit while held on bond if, at the same time, the defendant is serving a sentence on an unrelated case.

_____

O'DONNELL, J.

{¶ 1} We accepted a certified conflict in this case and agreed to resolve the following question:

"[Is] a defendant entitled to jail time credit for presentence detention time when held on a bond if, during the same period of time, he is serving a sentence on an unrelated case?"

151 Ohio St.3d 1525, 2018-Ohio-557, 91 N.E.3d 756, quoting the court of appeals' December 1, 2017 entry.

{¶ 2} We also accepted the state's discretionary appeal which sets forth the following proposition of law:

A defendant is not entitled to jail credit for pre-sentence detention time when held on bond on a case if, during the same period, the defendant is serving a jail sentence on a separate case.

{¶ 3} The certified conflict matter and the state's discretionary appeal were consolidated for review. *Id*.

{¶ 4} We answer the conflict question in the negative—that a defendant is not entitled to jail time credit for pre-sentence detention time when held on bond if, during the same period of time, he is serving a sentence on an unrelated case—and we reverse the judgment of the court of appeals.

**Facts and Procedural History**

{¶ 5} On June 12, 2015, a complaint was filed against Adam R. Cupp in the Chardon Municipal Court alleging one count of rape. Cupp posted a $75,000 bond, and the matter was transferred to the Geauga County Common Pleas Court.

{¶ 6} On June 29, 2015, a grand jury indicted Cupp on felony counts of rape, in violation of R.C. 2907.02, kidnapping, in violation of R.C. 2905.01, endangering children, in violation of R.C. 2919.22, and gross sexual imposition, in violation of R.C. 2907.05. On August 7, 2015, Cupp pled not guilty to all counts

and the court set a $400,000 bond. At that time, Cupp was incarcerated in the county jail in connection with a probation violation arising from an unrelated domestic violence case.

{¶ 7} On June 17, 2016, Cupp pled guilty to attempted abduction and endangering children, and signed a written plea agreement which stated that jail time credit would be addressed at sentencing.

{¶ 8} At the September 22, 2016 sentencing hearing, defense counsel urged the court to give him credit from the time his bond was revoked in June 2016 (as a result of his guilty plea), even though he had been incarcerated on the probation violation until July 29, 2016. The state contended that instead, credit should be awarded from July 30, 2016, the day after the sentence for the probation violation ended. The trial court sentenced Cupp, agreed with the state, and awarded jail time credit beginning at the completion of the sentence for the probation violation.

{¶ 9} Cupp appealed to the Eleventh District Court of Appeals, arguing entitlement to an award of jail time credit from the time the court revoked his bond on the felony charges. The appellate court examined the language of R.C. 2967.191, the jail time credit statute, and determined that its plain terms entitled Cupp to credit for the entire time he was incarcerated since his bail was revoked, regardless of the fact that he was already incarcerated for the probation violation.

{¶ 10} The state appealed and also filed a motion seeking to have the court of appeals certify that its judgment is in conflict with the First District's judgment in *State v. Washington*, 1st Dist. Hamilton Nos. C-050462 and B-0500722, 2006-Ohio-4790; the Third District's judgment in *State v. Maag,* 3d Dist. Hancock No. 5-03-32, 2005-Ohio-3761; the Ninth District's judgment in *State v. Brooks*, 9th Dist. Lorain No. 05CA008786, 2006-Ohio-1485; the Tenth District's judgment in *State v. Smith*, 71 Ohio App.3d 302, 593 N.E.2d 402 (10th Dist.1992); and the Twelfth District's judgment in *State v. Bradford,* 149 Ohio App.3d 586, 2002-Ohio-5508, 778 N.E.2d 134 (12th Dist.). The appellate court granted the motion,

holding that its judgment is in conflict with the judgments in *Washington, Brooks,* and *Smith.*

{¶ 11} Subsequent to the appellate court's decision but prior to the time when the state filed its notice of appeal, Cupp died. Defense counsel filed a suggestion of death, and served a copy on the state.

**Law and Analysis**

{¶ 12} We recognize that the death of a criminal defendant during the pendency of an appeal moots the action and pursuant to the mootness doctrine, we do not decide moot cases. *See Makley v. State,* 128 Ohio St. 571, 192 N.E. 738 (1934); *see also Dove v. United States,* 423 U.S. 325, 96 S.Ct. 579, 46 L.E.2d 531 (1976) (dismissing petition for writ of certiorari when criminal defendant died after filing the petition).

{¶ 13} Although the state's discretionary appeal may abate because of Cupp's death, the legal issue certified to this court does not abate. This court has discretion to answer the certified conflict question, and in this case we have chosen to do so.

{¶ 14} Significantly, this court knew at the time we accepted jurisdiction of the state's appeal that Cupp had died. The state's memorandum in support of jurisdiction stated plainly that Cupp "died in prison." Indeed, the attorney for Cupp argued in his memorandum contra jurisdiction that "[t]his matter is now moot as Cupp has passed away." We nonetheless accepted the case, both taking in the discretionary appeal and recognizing the certified conflict. 151 Ohio St.3d 1526, 2018-Ohio-557, 91 N.E.3d 758; 151 Ohio St.3d 1525, 2018-Ohio-557, 91 N.E.3d 756. We ordered briefing and conducted oral argument.

{¶ 15} Cupp's death is not dispositive of this appeal, because there are two independent matters pending that have been consolidated—one, the state's discretionary appeal, and two, the conflict certified by the court of appeals.

**{¶ 16}** The jurisdiction of the Supreme Court of the State of Ohio is circumscribed by the Ohio Constitution. Article IV, Section 3(B)(4) specifies that "[w]henever the judges of a court of appeals find that a judgment upon which they have agreed is in conflict with a judgment pronounced upon the same question by any other court of appeals of the state, the judges shall certify the record of the case to the supreme court for review and final determination." Nothing in the Constitution suggests that our jurisdiction is affected by the death of any party to a matter that has been certified by an appellate court for resolution by the Supreme Court.

**{¶ 17}** Indeed, we have previously found that we may resolve a matter even if it is moot with respect to one of the parties when an issue of public or great general interest outlives the instant controversy. *See, e.g., Franchise Developers, Inc. v. Cincinnati*, 30 Ohio St.3d 28, 31, 505 N.E.2d 966 (1987). In *Franchise Developers*, a developer applied for and was denied a building permit for a theater it wanted to remodel for use as a restaurant, and it challenged the denial by city council, arguing the city development guidelines were unconstitutional. *Id*. at 29-30. We recognized that the case became "technically moot" when the building sought to be remodeled by the developer was obtained by the city and transferred to another owner. *Id.* at 31. However, we exercised our discretion to reach the merits "under the standard that although a case *may be moot with respect to one of the litigants,* this court may hear the appeal where there remains a debatable constitutional question to resolve, *or* where the matter appealed is one of great public or general interest." (Emphasis added.) *Id*. Because the city still had an interest in our determination whether its development guidelines were constitutional, in our discretion, we addressed the merits in that case.

**{¶ 18}** In this case, the state is in the same position as the city in *Franchise Developers*; it has an interest in an answer to the certified conflict question beyond the instant case. The matter involved in this appeal regarding an inmate's

entitlement to jail time credit is a significant statewide issue perplexing jurists, litigators, and litigants who are anxious for a resolution. As such, it involves an issue of public or great general interest that one of the parties here—the state—still has despite Cupp's death. Thus, we exercise our discretion and answer the certified conflict question.

{¶ 19} The matter is not complicated. For decades, prior to what is now referred to as community control, trial courts regularly sentenced defendants to probation, and as a sanction for violating probation, imposed a period of incarceration. The sentence for a probation violation wholly related to the matter involving the predicate criminal conduct—separate and apart from other consequences for illegal activities engaged in while on probation.

{¶ 20} In the instant matter, Cupp had been confined in county jail for violating probation arising out of domestic violence cases at the time the felony charges for rape, kidnapping, endangering children, and gross sexual imposition were filed against him, and he did not complete that probation violation sentence until July 29, 2016.

{¶ 21} The appellate court rested its decision entirely on R.C. 2967.191. Citing *State v. Ashley*, 11th Dist. Lake No. 2006-L-134, 2007-Ohio-690, it recognized an offender is only entitled to credit for time spent incarcerated on the offense for which he was convicted. It concluded that because the trial court increased Cupp's bond to $400,000 on August 7, 2015, jail time credit should have begun at that time. It erred in this regard.

{¶ 22} The flaw in the appellate court analysis is its reasoning that, "because appellant did not post bond, he has been incarcerated related to the instant offense since August 7, 2015." But the facts here reflect that even if Cupp had posted bond, he could not have been released from incarceration, because his confinement did not arise at that time out of the felony offenses; rather, his confinement related to the probation violation regarding the domestic violence charge. As Judge Rice

correctly noted in her dissenting appellate court opinion, "There is no evidence in the record that the underlying felony offense provided any basis for appellant's probation violation in the municipal court."

{¶ 23} We are called upon here to apply the law as written. Former R.C. 2929.19(B)(2)(g)(i) (now R.C. 2929.19(B)(2)(f)(i), 2018 Am.Sub.S.B. No. 66) obligates the trial court to determine, "the number of days that the offender has been confined for any reason arising out of the offense for which the offender is being sentenced." Cupp became confined on the felony offense for which he was sentenced *after his confinement on the probation violation terminated*, i.e., on July 30, 2016, and if he had posted bond, he could have been released at that time. Prior to that date, however, his confinement related to the probation violation arising from the domestic violence related convictions in the municipal court. Thus, the trial court calculated jail time credit from July 30 and correctly awarded Cupp 58 days of jail time credit.

## Conclusion

{¶ 24} A defendant is not entitled to jail time credit while held on bond if, at the same time, the defendant is serving a sentence on an unrelated case. Accordingly, we answer the certified conflict question in the negative and reverse the judgment of the court of appeals. Because the defendant is deceased, remand is not necessary.

Judgment reversed.

O'CONNOR, C.J., concurs.

FISCHER and DEGENARO, JJ., concur in syllabus and judgment only.

KENNEDY, J., dissents, with an opinion.

FRENCH, J., dissents, with an opinion.

DEWINE, J., dissents, with an opinion.

_____

**KENNEDY, J., dissenting.**

**{¶ 25}** I disagree with the majority's decision to resolve this certified-conflict case and jurisdictional appeal. The death of appellee, Adam R. Cupp, renders the cases, which were consolidated for review, 151 Ohio St.3d 1525, 2018-Ohio-557, 91 N.E.3d 756, moot. Therefore, I would dismiss the appeal.

**{¶ 26}** The lead opinion relies upon the jurisdiction conferred upon the court by the Ohio Constitution, Article IV, Section 3(B)(4) and the absence in that section of language suggesting the death of a party affects jurisdiction. However, Article IV, Section 3(B)(4) does not mandate that the court decide a certified conflict upon certification by the court. And our precedent reveals that we are able to decide not to exercise our jurisdiction after certification of a conflict. *See, e.g, State v. Brown,* 151 Ohio St.3d 600, 2017-Ohio-8370, 91 N.E.3d 739 (certified-conflict case dismissed as having been improvidently certified); *State v. Richardson,* 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993 (court decertified the conflict and declined to answer the certified-conflict question).

**{¶ 27}** As recognized by the lead opinion, the death of a criminal defendant during the pendency of an appeal moots the action and under the mootness doctrine, we will not decide moot cases, *see Makley v. State,* 128 Ohio St. 571, 192 N.E. 738 (1934); *see also Dove v. United States,* 423 U.S. 325, 96 S.Ct. 579, 46 L.E.2d 531 (1976) (dismissing petition for writ of certiorari when criminal defendant died after filing the petition).

**{¶ 28}** Ohio courts refuse to exercise jurisdiction over cases that do not involve actual controversies. *Fortner v. Thomas,* 22 Ohio St.2d 13, 14, 257 N.E.2d 371 (1970). " 'The duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.' " *Miner v. Witt,* 82 Ohio St. 237, 238, 92 N.E. 21 (1910), quoting *Mills v. Green,* 159 U.S. 651, 653, 16 Sup.Ct. 132, 40 L.Ed. 293.

{¶ 29} I would dismiss the case as moot. There is no actual controversy to decide in this matter. The penal consequence of Cupp's criminal conviction ceased when he died. A judgment determining how much jail-time credit Cupp was legally entitled to cannot be carried into effect in this matter. The court should refrain from resolving the certified-conflict question raised here until such time as the decision will have an effect on the case before it.

{¶ 30} Therefore, I dissent.

_____

**FRENCH, J., dissenting.**

{¶ 31} Respectfully, I dissent.

{¶ 32} I agree with the lead opinion that this case is not moot. But in my view, a convicted defendant is entitled to jail-time credit for time spent incarcerated due to his inability to pay bond even if he was serving a sentence on an unrelated case at the same time. I would answer the certified-conflict question in the affirmative and affirm the judgment of the Eleventh District Court of Appeals.

{¶ 33} When statutory language is unambiguous, we need not resort to rules of statutory interpretation—we simply apply the language. *Sears v. Weimer*, 143 Ohio St. 312, 55 N.E.2d 413 (1944), paragraph five of the syllabus. Here, we look to the language of former R.C. 2929.19(B)(2)(g)(i),[1] 2012 Am.Sub.S.B. No. 337, which required a trial court to "[d]etermine, notify the offender of, and include in the sentencing entry the number of days that the offender has been confined *for any reason arising out of the offense for which the offender is being sentenced.*" (Emphasis added.) The statute's language is unambiguous. It tells the trial court to calculate and award jail-time credit for time spent confined for "any reason" arising out of the offense. It does not say that credit shall not be given if the defendant was serving a sentence imposed in a different case at the same time.

_____

[1] R.C. 2929.19 was amended as of October 29, 2018. The relevant language from former R.C. 2929.19(B)(2)(g)(i) is now contained in R.C. 2929.19(B)(2)(f)(i). 2018 Am.Sub.S.B. No. 66.

{¶ 34} R.C. 2967.191 is also instructive. That statute says what the Department of Rehabilitation and Correction must do upon receiving the trial court's sentencing entry awarding jail-time credit: the department "shall reduce the stated prison term of a prisoner * * * by the total number of days that the prisoner was confined *for any reason arising out of the offense for which the prisoner was convicted and sentenced, including confinement in lieu of bail while awaiting trial.*" (Emphasis added.) *Id.* The statute unambiguously instructs the department to reduce the defendant's sentence by the amount stated in the sentencing entry. And it specifically includes credit for time spent in confinement due to the defendant's inability to make bond. Neither former R.C. 2929.19(B)(2)(g)(i) nor R.C. 2967.191 includes any exception to that instruction, let alone one limiting jail-time credit because the defendant was serving a sentence imposed in another case.

{¶ 35} When the trial court increased Cupp's bond to $400,000 on August 7, 2015, Cupp became confined *for a reason arising out of the offense*—he could not afford the $400,000 bond. While it is true that Cupp was incarcerated on a separate community-control violation prior to August 7, 2015, and could not have been released if he were able to pay bond, it is equally true that his high bond caused his incarceration in this case. Applying former R.C. 2929.19(B)(2)(g)(i)'s plain language, it is of no consequence that " '[t]here is no evidence in the record that the underlying felony offense provided any basis for [Cupp's] probation violation in the municipal court.' " (Brackets added.) Lead opinion at ¶ 22, quoting 2017-Ohio-7948, 98 N.E.3d 738, ¶ 76 (Rice, J., dissenting). The separate orders of confinement need not be related. What is important is that Cupp was confined for a reason arising out of his offenses in this case.

{¶ 36} The state complains that the Eleventh District's interpretation of former R.C. 2929.19(B)(2)(g)(i) creates an absurd result because it gives defendants such as Cupp "double credit." Although former R.C. 2919.19(B)(2)(g)(i) is unambiguous, there are other indicia in Ohio law supporting

the lower court's interpretation. For instance, R.C. 2929.41 is Ohio's general statute prescribing when a trial court must order sentences to be served concurrently and when it may order them to be served consecutively. It shows a strong presumption in favor of concurrent sentences, which necessarily involve "double credit." R.C. 2929.14(C)(4) authorizes a court to order a defendant to serve sentences for felony offenses consecutively, but it requires the court to make specific findings before it can do so. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 37. It is not at all unusual for Ohio defendants to receive "double credit." The state's argument that it would be absurd to conclude that the General Assembly intended "double credit" in the jail-time-credit context is a nonstarter.

**{¶ 37}** This court's decision in *State v. Fugate*, 117 Ohio St.3d 261, 2008-Ohio-856, 883 N.E.2d 440, is also helpful. In that case, we observed that equal-protection principles lie at the foundation of Ohio's jail-time-credit scheme:

> The practice of awarding jail-time credit, although now covered by state statute, has its roots in the Equal Protection Clauses of the Ohio and United States Constitutions. Recognizing that the Equal Protection Clause does not tolerate disparate treatment of defendants based solely on their economic status, the United States Supreme Court has repeatedly struck down rules and practices that discriminate against defendants based solely on their inability to pay fines and fees.

*Id.* at ¶ 7, citing *Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); *Williams v. Illinois*, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970); and *Tate v. Short*, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971). We noted that Ohio's jail-time-credit scheme ensures equal protection for defendants who cannot afford

bond by reducing their sentences by an amount of time equal to that which they spent incarcerated before conviction. *Id.* at ¶ 11. Because the failure to give full credit for pretrial confinement violates a defendant's right to equal protection, it is not surprising that the General Assembly included the broad "any reason arising out of the offense" language when it crafted former R.C. 2919.19(B)(2)(g)(i) and 2967.191. "Double credit" is better than too little.

{¶ 38} If the General Assembly intended a defendant to receive jail-time credit only if he is not serving a separate sentence at the same time, it could have said so. In my view, it said the opposite.

{¶ 39} For all these reasons, I would answer the certified-conflict question in the affirmative and affirm the judgment of the Eleventh District Court of Appeals.

––––––––––––––––

**DEWINE, J., dissenting.**

{¶ 40} In 1793, France and Great Britain were at war. George Washington's cabinet was divided on how to maintain the United States' neutrality in the war while still honoring its treaties with the two countries.[2] To resolve the division, Washington sought guidance from the United States Supreme Court on the proper interpretation of the treaties. Chief Justice John Jay, on behalf of the court, delicately explained to the President that the lines of separation drawn by the Constitution between the departments of government did not permit the court to "extra-judicially decid[e] the questions alluded to." 3 *The Correspondence and Public Papers of John Jay* 488-489 (Johnston Ed.1891). Jay's response has long been understood as announcing the principle that the judicial power granted under the United States Constitution does not allow a court to offer advisory opinions.

––––––––––––––––

[2] For history on the "Neutrality Crisis," see Golove & Hulsebosch, *A Civilized Nation: The Early American Constitution, the Law of Nations, and the Pursuit of International Recognition*, 85 N.Y.U.L. Rev. 932, 1019-1061 (2010).

*See Flast v. Cohen,* 392 U.S. 83, 96, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968), fn. 14; *Campbell-Ewald Co. v. Gomez,* __ U.S. __, 136 S.Ct. 663, 678, 193 L.Ed.2d 571 (as revised Feb. 9, 2016).[3]

{¶ 41} This court's authority is derived from the Ohio Constitution. Our Constitution follows the model of the federal Constitution, dividing power between three distinct branches of government. Like the federal Constitution, the Ohio Constitution limits the authority of this court and inferior courts to the exercise of the "judicial power." U.S. Constitution, Article III, Section 1; Ohio Constitution, Article IV, Section 1. While the language of our Constitution does not mirror the "cases" and "controversies" language of the United States Constitution, *see* U.S. Constitution, Article III, Section 2, it is generally understood that the grant of the judicial power requires that we decide only "actual controversies where the judgment can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter at issue in the case before it," *Travis v. Pub. Util. Comm.,* 123 Ohio St. 355, 359, 175 N.E. 586 (1931).

{¶ 42} The provision of the Ohio Constitution that empowers us to decide certified-conflict cases reflects that our judicial power extends only to actual cases in which a real controversy exists. If the judges of a court of appeals find that "a judgment on which they have agreed is in conflict with a judgment" pronounced by another court of appeals court, the judges certify "the record of *the case* to the supreme court for review and *final determination.*" (Emphasis added.) Ohio Constitution, Article IV, Section 3(B)(4). We must then "review and affirm, modify, or reverse *the judgment.*" (Emphasis added.) Ohio Constitution, Article IV, Section 2(B)(2)(f). But when a matter is moot, there is no longer a case for us to review. And there is no longer in any real sense a judgment for us to affirm,

---

[3] Notably, the court later answered the questions that had been posed when they were presented in cases. *See* Golove & Holsebosch, 85 N.Y.U.L.Rev. at 1024-1025.

modify, or reverse. A judgment is a "court's final determination of the rights and obligations of the parties in a case." *Black's Law Dictionary* 970 (10th Ed.2014). When a case becomes moot, we cannot make a final determination of the rights and obligations of the parties, because there is no longer a dispute. Thus, the court today can make no determination about Adam Cupp's right to receive jail-time credit or the state's obligation to provide it—as the lead opinion admits in its final words, "[b]ecause the defendant is deceased, remand is not necessary." Lead opinion at ¶ 24.

{¶ 43} The lead opinion concludes that we may choose to ignore the constitutional limits on our authority and issue a purely advisory opinion because the state remains interested in the answer. But any time a court is asked to decide a moot case, some party remains interested; otherwise, no one would be pushing for a decision. And that it is the state—as opposed to a private party—that remains interested is of little moment. The questions put to Chief Justice John Jay and his fellow justices were of great interest to the government, and still they recognized they did not have power to answer them. Indeed, if the lead opinion's bent today carries over to other cases, the mootness doctrine will be virtually eviscerated for those numerous jurisdictional appeals accepted by this court on the basis of their "public or great general interest," Ohio Constitution, Article IV, Section 2(B)(2)(e); S.Ct.Prac.R. 5.02(A)(3).

{¶ 44} The lead opinion untethers this court from the requirement that it decide actual cases involving live controversies and enables this court to issue purely advisory opinions as long as it concludes that the question involved is of interest to the public. Because I find such an expansive role to extend beyond the judicial power entrusted to us under our Constitution, I respectfully dissent.

_____

James R. Flaiz, Geauga County Prosecuting Attorney, and Nicholas A. Burling, Assistant Prosecuting Attorney, for appellant.

Slater & Zurz, L.L.P., and Sean Buchanan, for appellee.

Timothy Young, Ohio Public Defender, and Katherine R. Ross-Kinzie, Assistant Public Defender, urging affirmance for amicus curiae, Ohio Public Defender.

_____